Opinion by
 

 Keller, P. J.,
 

 This was a petition for a declaratory judgment filed under the provisions of the Act of June 18, 1923, P. L. 840, as amended by the Act of April 25, 1935, P. L. 72 and supplemented by the Act of May 22, 1935, P. L. 228.
 

 The defendants,, without replying to the averments of fact, raised certain preliminary questions of law, under section 5 of the supplemental act, objecting to the legal right of the petitioner to have the disputed matters averred in the petition disposed of by a declaratory judgment. In so doing, they
 
 admitted
 
 — but
 
 only
 
 for the purpose of disposing of said preliminary objections — the truth of all the averments of fact in the petition. See
 
 West v. Young,
 
 332 Pa. 248, 2 A. 2d 745.
 

 The court below sustained the preliminary objections and dismissed the petition. The petitioner appealed.
 

 The original petition was filed December 23, 1937 and
 
 *567
 
 was served personally on both defendants in Philadelphia on December 24, 1937. Following the sustaining of preliminary objections to this petition on June 20, 1940, the petitioner, on July 5,1940, was granted a rule to show cause why leave should not be given him to file an amended petition, which, following a stipulation and agreement of counsel filed July 25, 1940, was made absolute on October 10, 1940 and on the same day the amended petition was filed.
 

 Stated as briefly as feasible for a proper understanding of the matter, it averred that the petitioner is and always has been a citizen of Pennsylvania residing in Philadelphia; that the defendant Helen B. Melnick, (hereinafter called Helen), for fifteen years prior to August 1931, was a citizen of Pennsylvania residing in Philadelphia; that on June 7, 1923 petitioner and the said Helen were married in Philadelphia, and thereafter were domiciled and continuously lived together as husband and wife in Philadelphia until May 11, 1929, when she forced petitioner’s withdrawal from their common home, and from that date until April 16, 1931, she lived at their former common home, separate from the petitioner, and refused to resume marital relations with him; that the said Helen went to the City of Reno, Nevada, for the purpose of obtaining a divorce from the petitioner, arriving there on April 16, 1931, and on May 29, 1931, precisely six weeks thereafter — that being the shortest required residence necessary in Nevada — she filed an application for divorce from petitioner in the Second Judicial District of Nevada, in and for the County of Washoe, on which she was granted a decree of absolute divorce from petitioner on July 20, 1931; that petitioner was never in the State of Nevada, was not lawfully served with any summons or process in said divorce proceeding, did not appear therein, nor authorize any person or attorney to appear for him therein; that on the same day the divorce was granted, and immediately following it, said Helen entered into
 
 *568
 
 a purported marriage with the other defendant, Samuel B. Rosenbaum, in Reno, Nevada, and the same day they left the State of Nevada and went to New Haven, Connecticut, where they have since unlawfully lived and cohabited as husband and wife.
 

 The petitioner averred the lack of jurisdiction of the State of Nevada to enter said decree of divorce against him, and that said decree is not and never was such judgment as entitles it to recognition in this State. He also averred at some length the injurious effects on his personal status and his personal and property rights occasioned by said colorable and unlawful Nevada decree, to which he has never consented, but at all times has challenged the legality thereof; which we do not deem it necessary to recite at length, otherwise than that he alleged, in support of the averment that he had always challenged the validity of said Nevada decree, that he had brought an action of trespass on May 26, 1932 against the said Samuel B. Rosenbaum to March Term 1932, No. 4070, Common Pleas No. 1 of Philadelphia County, for criminal conversation with petitioner’s wife, Helen. And he prayed for a declaratory judgment adjudging that the aforesaid decree of divorce obtained in Nevada on July 20, 1931, be declared color-able and invalid and that it did not dissolve the marriage relation between the petitioner and the defendant, Helen.
 

 The preliminary objections filed by the defendants may be summarized as follows:
 

 1. The petition fails to aver any property rights, real or personal, at issue.
 

 2. No actual or imminent controversy between petitioner and defendants is averred.
 

 3. Lack of jurisdiction in the court under the Declaratory Judgment Act.
 

 4. The petitioner seeks to have the marriage of defendants annulled and declared void.
 

 5. The decree prayed for will not terminate any
 
 *569
 
 controversy between, the parties, bnt may give rise to further litigation.
 

 6. The court in the exercise of its discretion should refuse to take jurisdiction.
 

 7. The petitioner shows that he was guilty of laches.
 

 8. He is using this means for the purpose of harassing, annoying and vilifying the defendants and without any concrete interest in the outcome of the controversy.
 

 9. It was conclusively held in
 
 Link B. & L. Assn, to use of Samuel Melnick v. Helen B. Melnick,
 
 285 [325] Pa. 182, that petitioner has no property rights by virtue of any status he may claim toward defendant, Helen B. Rosenbaum.
 

 The grounds assigned by the court for sustaining the preliminary objections filed by defendants were:
 

 1. The laches or delay of petitioner in bringing the proceeding.
 

 2. That petitioner had already instituted an action at law — the action of trespass against Samuel B. Rosenbaum — in which the issues between the parties could be determined without resort to proceedings for a declaratory judgment.
 

 3. The petitioner does not set forth that he contemplates any action for which he needs clarification of the situation.
 

 4. Nor does he set forth that any personal or property rights are involved or are in any way hampered at this time.
 

 5. There does not appear to be any controversy or the ripening seeds of any controversy.
 

 6. A declaratory judgment under these circumstances would amount to nothing more than an advisory opinion.
 
 [1]
 

 
 *570
 
 We are of opinion that the grounds specified by the court were not legally sufficient to sustain the preliminary objections of the defendants, and that the objections should have been overruled and the defendants directed to answer the petition on the merits.
 

 The original ‘Uniform Declaratory Judgment Act’ of 1923 provides (sec. 1) that “Courts of record, within their respective jurisdictions, shall have power to declare
 
 rights,
 
 status,
 
 and other legal relations
 
 whether or not further relief is or could be claimed,” (Italics supplied); and in section 12, “Construction. This act is declared to be remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered.”
 

 Section 6 of that act, which read as follows: “Discretionary. The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding” was amended by the Act of April 25, 1935, P. L. 72, by striking out all of the section except the heading, ‘Discretionary,’ and substituting an entirely new section.
 

 It will be noted that neither the original act, nor the amendment gives the court
 
 discretion
 

 [2]
 

 — in the meaning
 
 *571
 
 of ‘freedom to act. or decide’ — as' to whether it may render or refuse to render a declaratory judgment. The original act merely authorized the court to refuse to render a judgment,
 
 where
 
 such judgment would not terminate the controversy or uncertainty giving rise to the proceeding. That has been repealed and the amendment, in positive rather than negative form, declares that relief by declaratory judgment may
 
 [3]
 
 be granted in all civil cases where (1) an actual controversy exists between contending parties; or (2) the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or (3) the court is satisfied that a party' asserts a legal relation, status,
 
 [4]
 
 right or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is also satisfied that a declaratory judgment will serve to terminate the uncertainty, or controversy, giving rise to the proceeding.
 

 It then proceeds: “Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed; but the mere fact that an actual or threatened controversy is
 
 *572
 
 susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not deter a party from obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present,
 
 [5]
 
 but the case is not ripe for relief by way of such common law remedy or extraordinary legal remedy, or where the party asserting the claim, relation, status, right, or privilege and who might bring action thereon, refrains from pressing any of the last mentioned remedies. Nothing herein provided is intended to or should limit or restrict the general powers or jurisdiction conferred by the act here amended; but proceeding by declaratory judgment shall not be permitted where a divorce or annulment of marriage is sought.”
 

 It will be noted that, under the amendment of 1935, supra, relief by declaratory judgment may be granted where
 
 any
 
 of the three conditions above set forth exists. They do not have to concur. The conjunction used is ‘or.’ Therefore, if the court is satisfied that one party asserts a legal
 
 relation, status,
 
 right or privilege, in which he has a concrete interest, and that there is a challenge or denial of such asserted
 
 relation, status,
 
 right or privilege by an adversary party, who also has a concrete interest therein, either party may ask for a declaratory judgment, without showing that “antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation,” provided only, that a declaratory judgment will serve to terminate the controversy, or uncertainty, giving rise to the proceeding.
 

 No other statute in Pennsylvania provides a special form of remedy for the specific type of case presented
 
 *573
 
 here, hence the rest of the section above recited is inapplicable to limit or restrict the general power and jurisdiction conferred by the act. The clause forbidding the use of the statute to procure a divorce or annulment of marriage
 
 [6]
 
 means that a party cannot seek a divorce, or an annulment of his or her marriage, from his or her spouse, by a declaratory judgment,
 
 (McCalmont v. McCalmont,
 
 93 Pa. Superior Ct. 203) or in any other way than according to the practice prescribed under our laws regulating proceedings for divorce and the annulment of marriages, which since the Divorce Code of 1929, P. L. 1237, put husband and wife on an equality, as to absolute divorce and annulment.
 

 There can be no doubt that an actual controversy exists between the petitioner and the defendants. He asserts that Helen is his wife. She and her co-defendant contend that she is not; that that relation was dissolved by the decree of the Nevada court, and that they, the defendants, are now husband and wife. The facts averred in the petition and admitted for the purposes of this appeal by filing the answer raising questions of law, furnish support for appellant’s contention that the Nevada decree was null and void as against him and ineffective to destroy the marriage relation existing between him and Helen when it was entered:
 
 Reel v. Elder,
 
 62 Pa. 308, 315;
 
 Colvin v. Reed,
 
 55 Pa. 375;
 
 Duncan v. Duncan
 
 (No. 1), 265 Pa. 464, 469, 109 A. 220;
 
 Radinovitz’s Est.,
 
 299 Pa. 264, 267, 149 A. 317;
 
 Grossman’s Est.,
 
 67 Pa. Superior Ct. 367, 371; affirmed on the opinion of this court in 263 Pa. 139, 106 A. 86;
 
 Com. v. Manzi,
 
 120 Pa. Superior Ct. 360, 367, 182 A. 795. In the circumstances averred, it was not a decree entitled to full faith and credit in this Commonwealth under the Federal Constitution (Art. IV, sec. 1);
 
 Had
 
 
 *574
 

 dock v. Haddock,
 
 201 U. S. 562;
 
 Andrews v. Andrews,
 
 188 U. S. 14;
 
 Colvin v. Reed,
 
 supra;
 
 Price v. Schaeffer,
 
 161 Pa. 530, 535-6, 29 A. 279.
 

 ‘Concrete’ is defined by Webster to mean, “Belonging to actual things or events; real; not abstract, ideal or general; specific in application, particular — opposed to abstract or general.” And as synonyms of Special: “Specific implies precise or explicit designation;
 
 concrete
 
 adds the implication of actual existence or embodiment.” One who establishes the status or relation of marriage with another has a concrete interest in the continuance of such relation or status. It does not have to be a financial or property interest. A husband may defend his marital status or relation against a suit for its dissolution by divorce, although his wife has no property at all and his financial interests might be served by the divorce. Hence the plaintiff, having shown that he was married to Helen and asserted the existence of that marital relation or status as over against a decree of divorce obtained in Nevada, without legal service upon him, or his presence in said state, or appearance, or representation in said divorce proceeding, has a concrete interest in the affirming of the maintenance of that legal relation or status; and, the defendants, asserting its dissolution by the Nevada decree of divorce have a concrete interest in denying the maintenance and existence of that relation or status. This, under the amending statute of 1935 entitled the petitioner to ask for a declaratory judgment establishing the continued existence of that legal relation or status, provided only such declaratory judgment will serve to terminate the controversy giving rise to the proceeding. It does not have to
 
 satisfy
 
 the parties or restore marital harmony. We are satisfied that a declaratory judgment in the present proceeding will settle the disputed marital status between the petitioner and Helen and thus terminate the present controversy. There is no requirement in the statute that it shall settle all issues
 
 *575
 
 between the parties. In fact, we know of no other proceeding, open to the petitioner, in this Commonwealth in which the legal status of the parties can be settled and determined during the lifetime of both parties, while they are both able and competent to testify fully. The petitioner might, it is true, bring an action of divorce in Pennsylvania, and secure a decree severing the marital relation, but he does not want that. He desires its maintenance and continuance as a legal relation. He cannot compel his wife to live and cohabit with him, but, if her alleged marriage with the other defendant is null and void in Pennsylvania, her husband should have the right to have it so declared in a judicial proceeding, during his and her lifetime rather than wait until the death of one of them, whose mouth is closed and who is unable to testify.
 

 All persons involved in the present issue are parties in court. In
 
 Lockwood v. Lockwood,
 
 98 Pa. Superior Ct. 426, the husband of the petitioner was not made a party; the action against the defendant to have the court declare she had no right to use the name Lockwood, would settle nothing as to the legal status of the parties. But we intimated (p. 429) that if the petitioner had made her husband, William E. Lockwood, a party defendant and had made aveiunents respecting an alleged divorce secured by him, not recognized in this Commonwealth, or an attempted marriage between her husband and the defendant, and sought an adjudication as to her marital status with, or relation to, William E. Lockwood, a declaratory judgment would have been an available remedy.
 

 The Court of Common Pleas of Allegheny County, speaking through Judge Egan, rightly understood and applied our opinion in that case in
 
 Lansinger v. Lansinger,
 
 26 D. & C. 701, 703-4, where in a proceeding similar to this one, preliminary objections filed by the defendants raising questions of law along the lines advanced by the defendants in this case were decided
 
 *576
 
 against them and they were directed to answer on the merits. See also
 
 Lansinger v. Lansinger,
 
 30 D. & C. 291 (Rimer, P. J. 18th Dist. S.P.) where a declaratory judgment was entered in the same case, adjudging that the decree of divorce obtained by the defendant, Earl E. Lansinger, in Washoe County, Nevada, purporting to divorce him from the bonds of matrimony with the plaintiff, Yerna P. Lansinger, was invalid in Pennsylvania and did not dissolve the marriage relation between them. We are in substantial accord with the rulings in those cases.
 

 Declaratory judgment proceedings have been upheld in other jurisdictions, as a proper remedy in like or similar circumstances.
 

 In
 
 Baumann v. Baumann,
 
 226 N. Y. Supp. 576, 222 App. Div. 460, a petition for a declaratory judgment was filed in the Supreme Court of New York by a wife, alleging her marriage to the male defendant in New York and her residence there with him; his departure to Mexico to obtain a divorce, which was granted him there, although the petitioner wife was not legally served with process in said suit, was not present in Mexico and did not appear in said action; his journey to Connecticut where he ‘married’ the female defendant and then returned to New York and lived with the female defendant as man and wife. She asked for a decree declaring that the Mexican decree of divorce was invalid and of no effect in law, and that the marriage relation between her and her husband still subsisted, and enjoining .the defendants from holding themselves out as husband and wife. The lower court granted a motion of the defendants to dismiss the complaint because it did not state a cause of action for a declaratory judgment. The Appellate Division reversed the lower court, even though the defendants lived in New York and the petitioner could have proceeded under section 1134 of the Civil Practice Act to secure an annulment of the defendants’ alleged marriage, and
 
 *577
 
 sent the case back for trial on the merits. On the trial, the court declared the Mexican decree null and void, the Connecticut marriage between the defendants null and void, and issued an injunction restraining defendants from holding themselves out as man and wife, or going through any further marriage ceremony, etc. This order was affirmed by the Appellate Division in 229 N. Y. Supp. 833 (224 App. Div. 714) and by the Court of Appeals as to the declaratory features of the order, but reversed as to the injunctive features, 250 N. Y. 382, 165 N. E. 819.
 

 In
 
 Somberg v. Somberg,
 
 263 N. Y. 1, 188 N. E. 137, a petition for a declaratory judgment as to the wife’s marital status was refused, because the relation between the petitioner’s husband and the woman he held out as his wife, was not based on any decree of divorce to give it color of right, but was wholly illicit and meretricious; and the petitioner, therefore, needed no judgment or decree to declare her marital status. The Court of Appeals, in the majority opinion, said: “The case differs widely from that alleged and proven in
 
 Baumann v. Baumann,
 
 supra. There the husband had procured, in the state of Yucatan, Mexico, under the laws of that state, a decree or document which purported to grant a divorce from the plaintiff.
 
 In order to establish the continuance of the plaintiff in her original marital state
 
 it was appropriate for the court to try out and determine the question of the validity of the ostensible divorce obtained.” Three of the seven judges of the court dissented on the ground that the case was ruled by
 
 Baumann v. Baumann,
 
 supra.
 

 In
 
 Lowe v. Lowe,
 
 265 N. Y. 197, 192 N. E. 291, the preliminary objections filed to a petition for declaratory judgment to have a Nevada decree of divorce, obtained without legal service on the petitioner or her being present in said state or appearing in said action, declared null and void, and to enjoin the defendants from holding themselves out as husband and wife, and
 
 *578
 
 the female defendant from using the name Mrs. Lowe and from using the privileges of any club as the wife of the defendant Lowe, were sustained on the procedural ground that the petition improperly joined a prayer for injunctive relief as above stated, with the prayer for a declaratory judgment as to her status. The Court of Appeals said: “The decree of divorce granted without jurisdiction in Nevada is here entirely void and without legal consequences. It was merely a step in the consummation of an alleged conspiracy by the defendants to hold themselves out as husband and wife and thus cause the world to believe that the plaintiff was no longer the wife of defendant Lowe. It did not itself deprive the plaintiff of any right or cause any injury. Because it
 
 gave color of 'right to an open claim
 
 that the plaintiff was no longer the lawful wife of Lowe, it
 
 furnishes a ground for the invocation
 
 of the court’s power to declare the plaintiff’s rights to the legal relation of the parties in order to preclude
 
 possible controversy hereafter.
 
 Cf.
 
 Baumann v. Baumann,
 
 supra [250 N. Y. 382, 165 N. E. 819];
 
 Somberg v. Somberg,
 
 263 N. Y. 16, 188 N. E. 137. Such a declaration destroys even the color of right of the defendants to hold themselves out as husband and wife, but itself furnishes no ground for further relief by injunction to operate in the future.” (Italics supplied).
 

 The case of
 
 Baumann v. Baumann,
 
 supra, has been consistently followed by the Supreme Court and its Appellate Division. See
 
 Perrin v. Perrin,
 
 250 N. Y. Supp. 588, 591;
 
 Gold v. Gold,
 
 275 N. Y. Supp. 506, 509, affirmed by Appellate Division, 276 N. Y. Supp. 900;
 
 Pignatelli v. Pignatelli,
 
 8 N. Y. Supp. (2) 10, 19;
 
 Hollister v. Hollister,
 
 26 N. Y. Supp. (2) 1020, 1021; 261 App. Div. 693. See also
 
 Greenberg v. Greenberg,
 
 218 N. Y. Supp. 87, 97, 98, 218 App. Div. 104.
 

 In
 
 Mills v. Mills,
 
 119 Conn. 612, 179 A. 5, where the trial court (the Superior Court) had denied the plaintiff her right to a declaratory judgment, decreeing that
 
 *579
 
 the divorce obtained in Nevada by the defendant, Win-field S. Mills, from the plaintiff on January 9, 1932 be declared a colorable one and that it did not dissolve the marriage relation between the plaintiff and Mills, and that they are still husband and wife, the Supreme Court of Errors of Connecticut reversed and remanded the case to the iSuperior Court with direction to enter a judgment declaring that the Nevada decree of divorce did not affect the marriage relation between the plaintiff and the defendant, Winfield !S. Mills.
 

 In New Jersey, where the Court of Chancery has
 
 general
 
 jurisdiction in equity — not possessed by our courts of common pleas, beyond the matters specially committed to them by statute as courts of equity: Act of June 16, 1836, P. L. 784, sec. 13, etc.; 13 Standard Pennsylvania Practice, chap. 68, Enforcement of Eeal Property Mortgages, §4, p. &81;
 
 Peoples Pittsburgh Trust Co. v. Henshaw,
 
 141 Pa. Superior Ct. 585, 595, 15 A. 2d 711 — the Court of Chancery may entertain a bill for the primary purpose of declaring a decree of divorce fraudulently procured in another state to be without force or effect in New Jersey:
 
 Henry v. Henry,
 
 104 N. J. Eq. 21, 144 A. 18;
 
 Jung v. Jung,
 
 85 N. J. Eq. 372, 96 A. 499. But our courts of common pleas possess no such equitable power, except as it is committed to them by way of a declaratory judgment
 

 In
 
 Miller v. Currie,
 
 208 Wis. 199, 242 N. W. 570, a petition was filed by a child, the issue of an alleged legal common-law marriage, for a declaratory judgment establishing her status as the legitimate child of her deceased father, as over against the issue of a later marriage contracted by him with another woman during the lifetime of petitioner’s mother, said issue claiming that she was illegitimate; and the Supreme Court, reversing the lower court, held that it was a proper subject for a declaratory judgment. The Declaratory Judgment Act of Wisconsin is practically the same as
 
 *580
 
 ours was before the amendment and supplement of 1935.
 

 We are of opinion that the petitioner was not guilty of laches such as to deprive him of his right to a judgment declaring his marital status. There is no statute of limitations, or presumption of discharge, as to marital status or the marriage relation. In
 
 Cline’s Est.,
 
 128 Pa. Superior Ct. 309, 194 A. 222, a married woman went to live with a man not her husband and cohabited with him and was recognized by him as his wife for twenty-six years, until his death, bearing him six children, her lawful husband being alive and undivorced all the time. The passing iof the years did ¡not change her marital status nor make her relationship with her paramour lawful, or her children by him legitimate, notwithstanding her husband took no steps to preserve his marital relation. In the celebrated case of
 
 Haddock v. Haddock,
 
 supra, the husband left his wife in New York in 1868, settled in Connecticut in 1877, where he obtained a divorce in 1881, based on constructive, not actual, service. The wife brought an action of divorce from bed and board in New York in 1899, thirty-one years after he left her and eighteen years after his Connecticut divorce, and obtained personal service on him, and the decree of the Supreme Court of New York granting such divorce and alimony, affirmed by the Court of Appeals, was affirmed by the Supreme Court of the United States.
 

 The defendants in the present case were not residents of Pennsylvania. Service of process could not legally be made on them in Connecticut. The personal service on them — on
 
 both
 
 of them — necessary to give our courts jurisdiction, could only be made in Pennsylvania. Service on
 
 one
 
 of them would not be sufficient to give the court jurisdiction:
 
 Lockwood v. Lockwood,
 
 supra. There is nothing in the record to show that opportunity for such personal service on
 
 both
 
 existed before this proceeding was brought, or that the defendants were prej
 
 *581
 
 udiced by tbe delay, even though caused by their non-residence in Pennsylvania. The trespass action against Rosenbaum will not adjudicate petitioner’s marital status with the other defendant so as to bind her, for she is not a party to it. Grounds for such action may have existed before the Nevada divorce and a judgment in the petitioner’s favor in that action would not
 
 settle
 
 the question of his marital status. On the other hand, a declaratory judgment adjudicating such status would settle their marital status. In no sense would it be merely advisory.
 

 We have paid no attention to the reasons advanced by the defendants which are based on matters dehors the petition, for such matters cannot be considered on an answer raising preliminary questions of law, which must be limited to the averments contained in the petition and not introduce matters of defense on the merits. The proceeding is similar to a demurrer and may not be the equivalent of a ‘speaking demurrer.’
 

 All of the Pennsylvania authorities relied on by the court below and the defendants, except four,
 
 [7]
 
 were cases dealing with the Declaratory Judgment Act of 1923 before its enlargement and liberalization by the Amendment and Supplement of 1935; and none of those four dealt with any matters remotely resembling this case. In
 
 Allegheny County v. Equitable Cas Co.,
 
 321 Pa. 127, 183 A. 916, the charges due the county by the defendant for the use of its bridges was the matter involved, which could be settled by an action of assumpsit. In
 
 Erie City v. Phillips, Admrx.,
 
 323 Pa. 557, 187 A. 202, a statutory remedy fixing the amount of the commissions due the defendant’s decedent for collection of delinquent taxes was available.
 
 Carwithen’s Est:,
 
 327
 
 *582
 
 Pa. 490, 194 A. 743, and
 
 Capital Bank & Trust Co.’s Petition,
 
 336 Pa. 108, 6 A. 2d 790, were concerned with the care and disposition of
 
 trust property
 
 and sought merely
 
 advisory
 
 opinions. All of them must be read in the light of the facts then before the court:
 
 Kates’s Est.,
 
 282 Pa. 417, 424-5,128 A. 97;
 
 O’Malley v. O’Malley,
 
 272 Pa. 528, 536, 116 A. 500;
 
 Levin v. Fourth St. Nat. Bank,
 
 277 Pa. 350, 355, 121 A. 105;
 
 Cohens v. Virginia,
 
 6 Wheaton 264, 399.
 

 This case deals with matters within the scope of the enlarged powers given the court by the amending and supplementary acts, and, in our judgment, the opinion is in accord with the broad and liberal general principles laid down in
 
 Kariher’s Petition
 
 (No. 1), 284 Pa. 455, 131 A. 265 — in which the constitutionality of the original act was upheld — as applied and extended, in the same spirit, to the wider jurisdiction conferred by those acts; and also with the latest pronouncement of the Supreme Court, dealing with the effect of those amendatory and supplementary acts on the original Declaratory Judgment Act. See
 
 Moore v. Moore,
 
 344 Pa. 324, 25 A. 2d 130.
 

 The assignment of error is sustained. The order of the court below is reversed, and the record is ordered to be remanded to the court below, with leave to the defendants to file an answer to the averments of fact within fifteen days after the return of the record to that court, and further proceedings therein as prescribed by the. Supplemental Act of 1935, P. L. 228.
 

 [1]
 

 Reasons 3, 4, 5 and 6 were discussed in the first opinion and are included here because the court, in its second opinion, said, “It does not appear that the amended petition has eliminated the other objections that appeared in the original petition and which are discussed in the former opinion.”
 

 [2]
 

 “Judicial power, as contradistinguished from the power of the laws, has no existence. Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and when that is discerned, it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of tha Judge; always for the purpose of giving effect to the will of the Legislature; or in other words, to the will of the law.” Marshall, C. J. in
 
 Osborn v. U. S. Bank,
 
 9 Wheaton 738, p. 866. See also,
 
 Dauphin Co. Grand Jury Inv. Proc.
 
 (No. 3), 332 Pa. 358, 364-5, 2 A. 2d 809;
 
 Schlaudecker v. Marshall,
 
 72 Pa. 200, 206;
 
 Maloney v. Stahlnecker,
 
 341 Pa. 517, 522, 19 A. 2d 162.
 

 [3]
 

 “Where a statute directs the doing of a thing for the sake of justice the word ‘may’ means the same thing as the word ‘shall’”:
 
 Hotel Casey Co. v. Ross et al.,
 
 343 Pa. 573, 23 A. 2d 737, citing
 
 Supervisors of Rock Island County v. United States,
 
 71 U. S. 435 (4 Wallace);
 
 Galena v. Amy,
 
 72 (5 Wallace) U. S. 705.
 

 [4]
 

 The amending Act of 1935 does not limit the status or relations which may be adjudicated in a declaratory judgment to those included in section 2 of the Act of 1923. See
 
 Lockwood v. Lockwood,
 
 98 Pa. Superior Ct. 426. Under section 2 of that act the status or relation must be alleged to be affected by a statute, municipal ordinance, contract or franchise, and the question to be decided must arise thereunder. Under the Act of 1935 no such provision is required. It is general.
 

 [5]
 

 A comma is used here instead of a semicolon, which was “obviously an error in punctuation:”
 
 Allegheny County v. Equitable Gas Co.,
 
 321 Pa. 127, p. 129, Note, 183 A. 916.
 

 [6]
 

 Act of April 14, 1859, P. L. 647, repealed, but incorporated with some changes, in the Divorce Code of 1929, P. L. 1237, section 12.
 

 [7]
 

 Allegheny County v. Equitable Gas Co.,
 
 321 Pa. 127, 183 A.
 
 916; Erie City v. Phillips, Admrx.,
 
 323 Pa. 557, 187 A. 203;
 
 Carwithen's Est.,
 
 327 Pa. 490, 194 A. 743;
 
 Capital Bank & Trust Co.’s Petition,
 
 336 Pa. 108, 6 A. 2d 790.